UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODI MOEN,

    Plaintiff,

v.

GENESEE COUNTY FRIEND OF THE COURT, LARRY LESLIE, and RON SHRANK,

    Defendants.
    _____/

Case No. 2:08-cv-12824

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u> (docket entry 18)**

In this action, plaintiff Jodi Moen alleges that her employer, Genesee County Friend of the Court, discriminated against and harassed her because of a disability she suffered from, and by so doing violated the Americans With Disabilities Act of 1990, as amended, *codified at* 42 U.S.C. §§ 12101 *et seq.* The defendants are Genesee County Friend of the Court ("Friend of the Court"), which is Moen's employer, as well as Larry Leslie and Ron Shrank. Leslie is the Assistant Friend of Court; Shrank is Moen's immediate supervisor. Moen's complaint in this case asserted claims of (1) discrimination under the ADA, (2) harassment under the ADA, (3) retaliation under the ADA, (4) intentional infliction of emotion distress under Michigan law, and (5) negligent hiring, retention and supervision under Michigan law. The case was assigned to the Honorable Paul V. Gadola, who declined to exercise pendent jurisdiction over the state-law claims, and accordingly dismissed them. Docket no. 2. Thus, although the parties have spent considerable effort briefing those claims on the instant motion, they are not before the Court and will not be addressed here.

After the case was transferred to the undersigned, docket no. 8, defendants filed the instant motion for summary judgment, docket no. 18.  Defendants assert a variety of reasons why judgment should be entered in their favor, including that this Court lacks jurisdiction over Moen's retaliation claim, that individual co-employees cannot be held liable under the ADA, that Moen was not in fact "disabled" within the meaning of that statute, that Moen has offered no evidence that the individual defendants were involved in any disciplinary action against her, and that Moen has failed to prove any sort of causal connection between the alleged adverse actions taken against her, on the one hand, and her alleged disability or protected ADA activities, on the other.   The Court agrees with defendants that Moen has submitted no evidence of a disability, and that, with respect to her retaliation claim, she has failed to create a fact question on the issue of causation.  Accordingly, summary judgment will be granted in favor of defendants.

## FACTS

The record facts at this point consist mainly of Moen's account of things, along with a few undisputed statements by defendants and other Friend of the Court employees.  Jodi Moen began working for Genessee County Friend of the Court in 2002, as a paralegal.  In 2006 she became a Social Service Worker.  In this capacity, she handles cases involving child support, custody, parental rights, and the like.  Her specific duties include drawing up stipulations, meeting with clients, representing Friend of the Court before referees and judges, and transporting prisoners who are involved in these kinds of legal proceedings.  Dep. of Jodi Moen, document no. 19-2, p. 18.  Moen is paid by the hour.

In July 2007 Moen began experiencing pain in the heel of her left foot when she walked.  In her own words, the problem was that "every time I walked my left foot felt like I was stepping on a marble." *Id.* p. 37.  Over approximately the next two months the pain

grew worse, although Moen stated that it did not impact her ability to do her job. *Id.* p. 41. On September 20th, however, Moen visited her family doctor, Dr. Lisa Moody, in hopes of improving the situation.

Dr. Moody diagnosed a heel spur and tendinitis. Moen recounted that the heel spur was caused by "the tendon pulling on the bone and it formed the bone the opposite way." *Id.* p. 40. Dr. Moody prescribed a treatment regimen of stretching, ice, and wearing only tennis shoes for the following three months. She gave Moen a written prescription in regard to wearing tennis shoes. Before that time, Moen's normal work shoes had been two-inch heels. Moen dep., pp. 40-41.

At work the next day, Moen gave this prescription to defendant Shrank. Either Moen or Shrank must have forwarded her request to Friend of the Court's Human Resources department, because on September 24th Human Resources wrote to Moen, stating that because her job duties included appearing in court, wearing tennis shoes would not be acceptable. Document no. 1, p. 22. The HR department suggested that Moen could remain on the job if she could wear orthopedic shoes instead of tennis shoes. *Id.* According to Moen, defendants Leslie and Shrank also made oral statements to her rejecting her request to wear tennis shoes. In response, Moen obtained a revised prescription from Dr. Moody, permitting her to wear orthopedic shoes. Document no. 1, p. 27. This prescription was dated October 1st, 2007. The same day, Moen apparently placed an order for orthopedic shoes with the shoe vendor Wright & Filippis, but was told that it would take 10 days to manufacture shoes for her specific needs. Moen obtained a letter from Wright & Filippis to this effect, and the following day, October 2nd, submitted this letter to Friend of the Court, requesting that she at least be permitted to wear tennis shoes until her orthopedic shoes were ready. When Leslie and Battles told her that she needed

3

to memorialize this request in writing, Moen did so, drafting a letter that apparently characterized Friend of the Court's actions as a possible violation of the ADA.  At the management's request, Moen re-drafted the letter to omit the discussion of the ADA.

Notwithstanding this letter, on October 4th defendant Leslie told Moen that she could only wear tennis shoes at work if she had a letter from her doctor to that effect, and that Moen could not come to work in tennis shoes without such a letter.  That same day, however, Leslie apparently backed down from this position after Moen contacted Friend of the Court's Office of Equity and Diversity.  Moen apparently was able to wear tennis shoes at work thereafter until her orthopedic shoes were ready, although Leslie was still not willing to permit Moen to wear tennis shoes in a courtroom, despite receiving a letter from the judge who Moen appeared before stating that this would not be a problem.  Document no. 1, p. 31.  As it happened, however, no need arose for Moen to make any court appearances before her orthopedic shoes were ready.  Dep. of Jodi Moen, document no. 18-3, p. 51.

Moen alleges that in response to her assertion of a disability and her request for an accommodation, Leslie, Shrank and Friend of the Court retaliated against her in several ways.  First, On October 3rd, Moen states that defendant Shrank assigned her some unspecified additional duties in retaliation for her discussion of a possible ADA violation.  Second, Moen alleges that from October 5th to October 18th, both defendant Shrank and the Friend of the Court, Jack Battles, "completely ignored" her.  Third, on October 19th, Moen learned that Leslie, Shrank and Battles had reached the conclusion that Moen was filling out her time cards inaccurately.  On October 22nd, the three men held a meeting with Moen, at which they told her that the building's video security system had captured images of her leaving work a few minutes earlier than permitted each day between October 8th and

October 12th. They additionally accused her of taking unauthorized extended breaks from work.

The same day, Moen was sent a written "Notice of Disciplinary Action," stating that left work between two and ten minutes early every day during the week of October 28th, and that her pay would be docked proportionately with respect to days when she had left more than five minutes ahead of time. The total forfeiture came to 28 minutes' worth of wages. More seriously to Moen, her ability to work on "flex time" -- that is, to work flexible hours so long as she was in the office for the required total time -- was suspended until January 1st, 2008. As a result, Moen was required to be in the office from 8 till 5 each day, whereas before she had been able to leave work when she needed to and make up the time later. After receiving this notice, Moen asked to see the videotapes that defendants said showed her leaving work early. She was apparently permitted to view some but not all of these tapes. Moen also asserts that "no investigation was done . . . regarding whether the video clocks were the exact same as the other clocks that employees used at their workstations." Compl., document no. 1, ¶ 43. Moen also responded in writing to the notice of discipline, denying that she had left work early. Document no. 19-9. Along with her response, Moen submitted letters from several of her co-workers, attesting that she had stayed at work till her scheduled end times. This apparently did not result in any change in the disciplinary actions.

Fourth, there appears to be no dispute that on November 15th, 2007, Battles informed Moen that she would be transferred to work before a different judge. The Friend of the Court team that was assigned to Moen's new judge was undisputedly assigned office space in the basement of the Friend of the Court building, and Moen was accordingly required to work out of a basement office. It appears that a majority of Friend of the Court's paralegals

5

and social service workers have offices in the basement. Aff. of Jack Battles, document no. 23, ¶ 9. Moen's transfer apparently was effective as of December 3rd. Moen states that the judge she was working before contacted Battles to request that Moen stay in his courtroom, but that Battles did not relent. Moen also objected to her new basement office, which additionally and was the smallest of the offices available at the time. Moen claims that, due to another medical condition unrelated to her foot, she should have been assigned a larger office in order to accommodate a special-needs desk that she worked at. Toward the end of November, the office of risk management at Friend of the Court informed Leslie that Moen needed a bigger office to accommodate her desk, but Leslie refused to make any change. According to the uncontradicted affidavit of Leslie, Moen's previous workspace had been a cubicle without a permanent door, which measured ten feet by twelve feet. Her new office was nine feet by twelve feet. The available larger offices, again according to Leslie's uncontradicted affidavit, were assigned by seniority to employees who had longer tenure than Moen.

Moen ultimately filed a complaint with the EEOC. The date of this complaint is somewhat unclear from the record; Moen's charging document is dated January 1st, 2008, while the EEOC's letter acknowledging receipt of the charge is dated December 13th, 2007. Document no. 1, pp. 33-36. In any event, in the charging document, Moen checked the box alleging discrimination based on disability, and stated that

> I have been harassed because of my condition in that I was initially prescribed athletic shoes to wear. I was instructed to have the prescription changed. Since that time, I have contacted the Office of Equity and Diversity. I am now experiencing harassment which includes scrutinizing of my time and attendance. No reason was given to me for the discrimination.

The EEOC issue Moen a right-to-sue letter on April 23rd, 2008. Document no. 1, pp. 41-42.

Since September of 2007, Moen's foot pain has waxed and waned. Moen stated that the condition improved for a time, but has since returned. Dep. of Jodi Moen, document no. 18-3, p. 52. As of the time of her deposition, on February 16th, 2009, Moen stated that "I can't walk properly without these [orthopedic] shoes on or tennis shoes on. I even wear tennis shoes in the house." *Id.* p. 103. She also stated that her EEOC complaint was inaccurate, in that at the time it was filed -- apparently in late January 2008 -- she would have been unable to do her job without wearing orthopedic shoes. *Id.* pp. 102-04.

## LEGAL STANDARD -- SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a

7

defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

8

**ANALYSIS**

I.  Discrimination and Harassment Claims

Moen's first two claims are for discrimination and harassment based on disability, in violation of the ADA. 42 U.S.C. § 12112 provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." The Sixth Circuit has stated that

> [a] prima facie case of disability discrimination under the ADA requires that a plaintiff show: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Daugherty v. Sajar Plastics, Inc.*, 544 F. 3d 696, 702-03 (2008) (quoting *Macy v. Hopkins County Sch. Bd. of Educ'n*, 484 F. 3d 357 (6th Cir. 2007). Alternatively, a plaintiff who allegedly faced harassment as a result of her disability may make out an ADA claim for a "hostile work environment," by demonstrating that "(1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures."

Thus, both a standard discrimination claim and a harassment claim under the ADA require proof that the plaintiff was in fact "disabled," within the meaning of the statute. The ADA defines "disability" to mean "with respect to an individual -- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B)

9

a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12012(1).

The defendants argue that Moen has not shown that she met this standard at the time the alleged discrimination occurred. For the most part, the Court agrees. Both before and after the Americans With Disabilities Act Amendments Act of 2008, walking -- the activity that Moen claims caused her pain -- qualified as a "major life activity" under the ADA. *See Penny v. UPS*, 128 F. 3d 408, 414 (6th Cir. 1997) (pre-amendments); 42 U.S.C. § 12012(2)(A) (post-amendments). But the record is devoid of any evidence that Moen's medical condition had any substantial impact on her ability to walk during the second half of 2007, when defendants were allegedly discriminating against her. Moen's uncontradicted testimony is that in September 2007 it felt like she was stepping on a marble when she walked, but that even before she started wearing tennis shoes and orthopedic shoes this pain had no impact on her ability to do her job. in *Penny*, the Sixth Circuit made it clear that "moderate difficulty or pain experienced while walking does not rise to the level of a disability." *Penny*, 128 F. 3d at 415. Mr. Penny testified that "I limp on occasion" and that "[s]ometimes it hurts to walk." *Id.* But the Court noted that he had provided no testimony as to any actual limitations on his ability to walk, and in fact had lived an active lifestyle. *Id.*

The Court recognizes that *Penny* was decided before the enactment of the ADA Amendments Act of 2008, which substantially expanded the definition of "disability." *See* Pub. L. 110-325, 122 Stat. 3553-59; *see also* 42 U.S.C. § 12102(4). The ADA Amendments Act, however, does not apply retroactively to conduct that occurred before its enactment. *Milholland v. Sumner County Bd. of Educ'n*, --- F. 3d ---, No. 08-5568, at *4-7 (6th Cir. July 2d, 2009). Most of the conduct that Moen here complains of took place in

10

2007, and is therefore unaffected by the Act.  In any event, no matter how far the Act broadened the universe of conditions that can qualify as a substantially impairing a major life activity, it did not eliminate the substantial-impairment requirement altogether.  Thus, a plaintiff like Moen who states that a medical condition caused her some pain and discomfort, but who offers no evidence at all of any concomitant impairment in her activities, must be held to have failed to state an ADA claim under either the pre- or post-amendment standard.

Moen did appear to state at her deposition that, by the time she filed her EEOC complaint in late January of 2008, she would have been unable to perform her job duties without wearing orthopedic or tennis shoes.  As Moen's work appeared not to involve any unusual strain on her feet, this testimony might possibly be interpreted as establishing some kind of impairment to her ability to walk.  This is insufficient to create liability for two separate reasons.  First, under the pre-2008 version of the ADA, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999).  Here, Moen states that she cannot walk properly *without* wearing orthopedic or tennis shoes -- the unmistakable implication being that she *can* walk properly when she does wear the shoes. Accordingly, once her corrective measures are taken into account, Moen cannot ever have been regarded as "disabled," within the meaning of the Act.

Second, even if Moen had been "disabled" when she filed her EEOC charge in late January 2008, this was more than a month *after* the alleged discriminatory and harassing actions took place.  Any disability she suffered at that time, accordingly, is insufficient to

11

support liability for actions that allegedly took place between September and December of 2007.[1]

For these reasons, the Court concludes that no reasonable jury could find that Moen's heel condition qualified as a "disability," within the meaning of the ADA, at or before the time of the defendants' actions that she complains of. Accordingly, Moen is unable to maintain claims for discrimination or harassment under the ADA, and summary judgment will be entered in favor of defendants on Counts I and II of Moen's complaint.

II. Retaliation Claim

The Court's conclusion that Moen was not "disabled" under the ADA does not dispose of her retaliation claim, because "[a] plaintiff may prevail on a disability-retaliation claim "even if the underlying claim of disability fails." *Bryson v. Regis Corp.*, 498 F. 3d 561, 577

---

[1] As an exhibit to her response brief on this motion, Moen has also filed an affidavit stating that she was twice denied a transfer to a position she was interested in, in November of 2008 and in April or May of 2009. Aff. of Jodi Moen, document no. 19-14. As Moen does not mention these denials in her complaint, and has not sought leave to amend it for that purpose, these claims are not properly before the Court. Even if they were, however, they would be unlikely to succeed. Again, there are two reasons for this. First, Moen admits that her desired transfer "is a lateral move and no pay raise." *Id.* ¶2b. Thus, there is a serious question whether the denial of such a transfer even qualifies as an adverse employment decision. Second, even if Moen did indeed become "disabled" at some point, there is precious little evidence that Friend of the Court was ever made aware of this fact before February of 2009, which would eliminate liability for the first transfer denial. At the time Moen presented the prescription from Dr. Moody to Friend of the Court, Moen was wearing two-inch heels to work, and her heel condition admittedly had no impact whatsoever on her job performance at that time. Dr. Moody's prescription, which Friend of the Court was informed of, only required Moen to wear tennis or orthopedic shoes for three months. And, as noted above, once Moen started wearing the orthopedic shoes there is no evidence that her heel condition had any visible impact on her daily work activities. In her EEOC charge she even stated that she would be able to do her job without any accommodation-- 36 that is, without wearing special shoes. Document no. 1, p. 36. As far as the record reveals, the first notice after the EEOC filing that Friend of the Court had that Moen even still had a foot condition was at her deposition, in February of 2009.

12

(6th Cir. 2007) (quotation marks and citation omitted).  Thus, this claim will be considered separately.

A.  Jurisidiction

As a preliminary matter, defendants challenge the Court's statutory jurisdiction over Moen's retaliation claims.  Pursuant to 42 U.S.C. § 12117(a),  the ADA is enforced through the procedural mechanisms of 42 U.S.C. § 2000e-5(f)(1).  Under the latter statute, a plaintiff may bring an ADA enforcement action only filing a charge with the Equal Employment Opportunity Commission and receiving a right-to-sue letter from the Commission.  Even then, "if a plaintiff did not first present a claim to the [EEOC], that claim may not be brought before the federal courts on appeal."  *Tisdale v. Fed. Express Corp.*, 415 F. 3d 516, 527 (6th Cir. 2005).  Specifically, "retaliation claims based on conduct that occurred before the filing of the EEOC charge must be included in that charge."  *Id.*

The Sixth Circuit has also said, however, that a plaintiff's ability to bring suit alleging unfair employment practices

> should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include the exact wording which might be required in a judicial pleading. Thus, where the claimant is unrepresented, a broader reading of the [EEOC] charge . . . is compelled. In such cases, we have stated that [t]he judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.  Therefore, where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.

*Id.* (quotation marks and citation omitted).

Here, although Moen is employed in the legal field, she is not herself an attorney and apparently was not represented one when she completed her EEOC charge.  In so doing, she checked the box indicating that she was complaining of discrimination based on disability, but not of retaliation.  In this context, however, the Sixth Circuit has stated that

13

the question is not whether "the complainant failed to check the retaliation box on the EEOC form," *id.*, but rather whether she "alleged facts to the EEOC which clearly included retaliation allegations," *id.* (quoting *Duggins Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999)). The Court is satisfied that Moen meets this standard. The narrative portion of her EEOC charge states that "I have been harassed because of my condition in that I was initially prescribed athletic shoes to wear. . . . Since that time, I have contacted the Office of Equity and Diversity. I am now experienced harassment which includes scrutinizing of my time and attendance." Document no. 1, p. 34. From this, one could reasonably expect an EEOC investigate to look into whether Moen had bee retaliated against for (1) requesting permission to wear athletic shoes on the job, or (2) contacting the Office of Equity and Diversity. Accordingly, the Court concludes that it has jurisdiction over Moen's retaliation claim.

### B. Burden-Shifting Analysis

Where, as here, an ADA plaintiff can present no direct evidence of a causal connection between her protected activity and the alleged adverse employment action, she may prove her case using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Bryson v. Regis Corp.*, 498 F. 3d 561, 577 (6th Cir. 2007). Under that framework, the plaintiff's initial burden "is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 570 (quoting *Macy v. Hopkins County Sch. Bd. of Educ'n*, 484 F. 3d 357, 363 (6th Cir. 2007)). Then,

> If the plaintiff satisfies her prima facie showing, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext

> for unlawful discrimination [or, as in *Bryson*, unlawful retaliation]. Although the burdens of production shift, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff.

*Id.* (citations and internal quotation marks omitted; second alteration in original).

A common, but not the exclusive, method for a plaintiff to establish a prima facie case of retaliation "is by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Id.* (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir.2001)). "The burden of establishing the prima facie retaliation case is easily met," such that mere temporal proximity between the protected activity and the adverse action can be sufficient to permit an inference of a causal connection. *Singfield v. Akron Metropolitan Housing Auth'y*, 389 F. 3d 555, 563 (6th Cir. 2004) (citations omitted). Moen requested an accommodation under the ADA, and complained to Friend of the Court's office of Equity and Diversity when she felt she was discriminating against as a result. These clearly qualify as protected activities. She further alleges that several negative consequences followed shortly after her request. Moen claims that the day after her request, she was given unspecified additional duties. Moen also states that for a nearly two-week-long period starting three days after her request and one day after her complaint to the office of Equity and Diversity, Leslie and Shrank "completely ignored" her in the workplace Without more explanation of the circumstances of these alleged events and the nature of their consequences, however, the Court is unable to say that a reasonable jury could conclude that either of them qualifies as an adverse employment action.

Two others of Moen's complaints appear to have more substance. It is undisputed that less than three weeks after her request, Moen was disciplined, in the form of docking

15

about half an hour's worth of pay, and suspending her ability to work a flexible schedule for two months. Finally, just under two and a half months after her request and complaint, defendants transferred Moen to a different judge and a basement office into which her desk would fit only with difficulty.

The Court will assume without deciding that both of these actions are substantial enough to qualify as retaliation under the ADA, and that their proximity in time to Moen's protected activity is sufficient to permit an inference of a causal connection. On this assumption, the burden thus shifts to the defendants to proffer non-discriminatory reasons for each of these actions. In the Court's view, defendants have done so. They assert that the docking of Moen's pay and the suspension of her flex time were consequences of her leaving work early and taking unauthorized extended breaks. They further assert that the transfer of offices and judges was the result of Friend of the Court's hiring several new paralegals and social service workers. According to the uncontradicted affidavit of Jack Battles, Moen was reassigned to a new judge in order to ensure that no judge would be assigned a team of paralegals and social service workers composed entirely of new hires. Aff. of Jack Battles, document no. 23, ¶¶ 6-7. She was assigned to a new office in order to be in close proximity to the rest of the team assigned to her new judge. *Id.* ¶ 9. Moen was given the smallest of the available basement offices because the two other offices were assigned to employees with more seniority. Aff. of Larry Leslie, document no 20-5, ¶ 7. According to Leslie's uncontradicted statement of the dimensions of the office as compared to Moen's former cubicle, any desk that would fit into one would fit into the other.

Accordingly, the burden shifts back to Moen to establish that these reasons are pretextual. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or

16

(3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F. 3d 1016, 1021 (6th Cir. 2000). Moen offers no evidence at all that the reasons given for her reassignment to a new judge and office are pretextual. Accordingly, she has failed to create a genuine issue of fact as to defendants' liability for those actions. With respect to the docking of her pay and suspension of her flex-time privileges, Moen does not argue that her alleged early departures from work and unauthorized breaks were insufficient to warrant the discipline. She does, however, maintain that there is no basis in fact for her alleged infractions. In this regard, the docket contains letters from three of Moen's co-workers, stating that they were working with her on the days when she allegedly left early, and that she was in fact at work until her scheduled departure time. Document nos. 19-10, 19-11, 19-12. As these letters are not sworn affidavits, however, they are not competent evidence in opposition to a motion for summary judgment. *Carter v. W. Reserve Psychiatric Rehab. Ctr.*, 767 F. 2d 270, 273 n.2 (6th Cir. 1985). As a result, there is at best no more than a scintilla of evidence in the record supporting Moen's claim that defendants' stated reasons for discharging her were pretextual, and Moen is also unable to avoid summary judgment on this claim. Accordingly, there is no need to reach the defendants' other arguments on this topic.

## CONCLUSION AND ORDER

On the record evidence, no reasonable jury could conclude that, at the time of defendants' alleged wrongdoing, Moen was "disabled" within the meaning of the ADA. Accordingly, summary judgment is appropriate on her discrimination and hostile-work-environment claims. Further, in light of the defendants' uncontradicted legitimate explanations for the allegedly adverse employment actions taken against Moen, and of her failure to adduce substantial evidence that these reasons were pretextual, no

reasonable jury could find that those actions were retaliation for her engagement in any protected activity. Summary judgment is therefore appropriate on Moen's retaliation claim as well.

**WHEREFORE**, it is hereby **ORDERED** that defendants' motion for summary judgment is **GRANTED**. Judgment will be entered for defendants, and the case will be closed.


**SO ORDERED.**



s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 6, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 6, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager